**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| WILLIAM FLOWERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 20-cv-06498 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| RYAN STEC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff William Flowers filed this lawsuit against Chicago Police Officers Ryan Stec, Ted Jozefczak, and Peter Chambers alleging that they fabricated evidence that he sold narcotics. Flowers contends that the officers' misconduct led to his wrongful detention and the revocation of his mandatory supervised release ("MSR"), keeping him in custody even after the narcotics charge ("Drug Charge") was dismissed. Accordingly, Flowers asserts claims against the officers pursuant to 42 U.S.C. § 1983 for false arrest (Count I) and unlawful pretrial detention (Count II) in violation of the Fourth Amendment. Flowers also brings a supplemental state law claim against the City of Chicago ("City," and collectively with Stec, Jozefczak and Chambers, "Defendants") for indemnification (Count III). The Court previously dismissed Count I with prejudice as to Sergeant Chambers. Now, Defendants move for summary judgment as to the remaining claims. (Dkt. No. 86.) For the following reasons, Defendants' motion is granted.

**BACKGROUND**

The following facts are drawn from the parties' submissions under Local Rule 56.1. Where the facts are disputed, the Court views the facts in the light most favorable to Flowers as the nonmoving party. *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021).

Prior to the events at issue, Flowers was convicted of being an armed habitual criminal ("Gun Charge"). (Plaintiffs' Response to Statement of Material Facts ("PRSF") ¶ 6, Dkt. No. 96.) On October 3, 2013, he was sentenced to eight years' imprisonment with three years' MSR. (*Id.* ¶ 7.) He signed an MSR agreement on September 19, 2017, and he was released from Danville Correctional Center eight days later. (*Id.* ¶¶ 8, 11.)

On November 8, 2018, Chicago police officers set up a narcotics operation at the intersection of Springfield Avenue and Roosevelt Road in Chicago. (*Id.* ¶ 12.) Officer Jozefczak conducted surveillance from a nearby building, while Sergeant Chambers and Officer Stec remained in the area as enforcement officers. (*Id.* ¶¶ 13–14.) Officer Jozefczak reported that he saw two men engage in a hand-to-hand drug sale. (*Id.* ¶ 24.) That morning, police arrested Joseph Allen with two bags of heroin, then arrested Flowers shortly thereafter. (*Id.* ¶¶ 24.)

Defendants claim that Flowers was arrested because he matched the description of the person selling drugs seller. (*Id.* ¶¶ 27.) But Flowers denies that he matched the description of the seller or that he was selling drugs. (Defs.' Resp. to Statement of Material Facts ("DRSF") ¶¶ 1, 10–12, Dkt. No. 100.) And Allen never identified him as the seller. (*Id.* ¶ 4.) Nonetheless, Sergeant Chambers and Officer Stec filed sworn reports claiming Flowers owned heroin recovered from a nearby vacant lot and that Officer Jozefczak saw him sell to Allen and others— statements that Flowers alleges were fabricated and repeated in criminal complaints and to prosecutors. (*Id.* ¶ 35.)

Based on those statements, the Illinois Department of Correction ("IDOC") issued a parole warrant. (PRSF ¶ 30.) Although Flowers received an I-Bond (*i.e.*, a personal recognizance bond) the next day in state court, he remained in custody pursuant to the parole warrant, he was transferred to IDOC on November 13, 2018, and soon thereafter he faced parole revocation

2

proceedings. (*Id.* ¶¶ 32–33, 38–39.) On December 27, 2018, the Prisoner Review Board ("PRB") made a probable cause finding that the conditions of Flowers's release had been violated based on the indictment for the new criminal offense. (DRSF ¶ 29.) During her deposition in this case, IDOC's counsel testified that a Cook County indictment constitutes an automatic probable-cause finding, so no hearing was required for Flowers at that point. (Defs.' SOMF, Ex. 8, Sears Dep. 71-6–72:6, Dkt. No. 87-9.) On January 3, 2019, the PRB revoked Flowers's parole, finding by a preponderance of the evidence that he had committed a new drug offense. (PRSF ¶ 43.) Though Flowers contends that this was not a robust process,[1] he acknowledges the PRB formally revoked his parole, effective November 8, 2018. (*Id.* ¶ 45.)

The State dismissed the Drug Charge *nolle prosequi* on June 22, 2019. (*Id.* ¶ 48.) Flowers nonetheless remained in custody to complete his Gun Charge sentence. (*Id.* ¶ 49.) Because the sentence for that underlying offense required 85% service, his discharge date was extended to June 16, 2020. (Defs.' SOMF, Ex. 9, Goldman Aff. ¶¶ 6–7, Dkt. No. 87-9.) Time served in custody from November 8, 2018 to June 16, 2020, was credited to the sentence. (PRSF ¶ 51.)

On November 2, 2020, Flowers filed this suit against Officer Stec, Officer Jozefczak, "Unknown Chicago Police Officers," and the City of Chicago, claiming false arrest and unlawful pretrial detention in violation of the Fourth Amendment. Flowers was later able to identify Sergeant Chambers as an additional Defendant, and he appeared and joined the then-pending motion to dismiss. (Dkt. No. 8.) On Defendants' motion, the Court dismissed the first amended complaint without prejudice for failure to state a claim. (Dkt. No. 31.) Flowers subsequently filed his second amended complaint ("2AC"), asserting claims against the individual officer

---

[1] To be clear, Flowers is not asserting a procedural due process claim based on a failure to give him a hearing.

Defendants pursuant to § 1983 for false arrest (Count I) and unlawful pretrial detention (Count II) in violation of the Fourth Amendment, along with a supplemental state law indemnification claim against the City (Count III).

Only Sergeant Chambers moved to dismiss the complaint. (Dkt. No. 36.) As to Sergeant Chambers, the Court dismissed Count I with prejudice as time-barred, as he was not named as a Defendant until after the limitations period had lapsed, but allowed Count II to proceed, finding that it was unclear from the record whether Flowers had been detained on the Drug Charge or on a separate parole violation. (Dkt. No. 52.) This distinction mattered because the statute of limitations for Flowers's unlawful pretrial detention claim accrued when his pretrial detention ended. If his pretrial detention ended November 8, 2018 with the revocation of his MSR, his claim would be barred by the two-year statute of limitations. Notably, in their motion practice at the pleadings stage, the parties focused primarily on the statute of limitations, disputing when Flowers's pretrial detention ended and his MSR-based custody began. Now, with discovery complete and a more fulsome record available, it is clear that Flowers remained in custody after November 8, 2018, not because of the Drug Charge but because of a parole violation based on an IDOC warrant and subsequent MSR revocation.

## DISCUSSION

Summary judgment is appropriate if the admissible evidence considered as a whole shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law, even after all reasonable inferences are drawn in the non-movant's favor. *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 517 (7th Cir. 2011). A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (quoting *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986)). While facts and reasonable inferences are construed in the light most favorable to the non-moving party, "[the Court's] favor ... does not extend to drawing inferences that are supported by only speculation or conjecture." *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 503 (7th Cir. 2017) (internal quotation marks omitted). The Court grants summary judgment when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." *Celotex v. Catrett*, 477 U.S. 317, 322 (1986).

## I.      Standing

Defendants first argue that Flowers's remaining Fourth Amendment claims should be dismissed because he lacks standing to bring them. Article III standing, necessary for subject-matter jurisdiction, requires Flowers to establish that he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial ruling." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

Defendants contend that Flowers does not have Article III standing because he cannot show a redressable injury. When Flowers first filed his lawsuit, his theory centered on a false arrest and unlawful pretrial detention based on fabricated evidence related to the Drug Charge. But the record now makes clear that he did not suffer any alleged harm from those events within the limitations period. Instead, the only Fourth Amendment seizure Flowers suffered that falls within the limitations window stems from his parole revocation. But that period of custody—November 8, 2018 to November 13, 2018—was fully credited toward his lawful sentence for the Gun Charge. It is well-established that a convicted prisoner has no constitutional right to release on parole or supervised release before completing a valid sentence. *See Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). And the Seventh Circuit has made clear that

5

a § 1983 plaintiff may not recover damages for time that was credited to a valid sentence. *See, e.g., Patrick v. City of Chicago*, 81 F.4th 730, 737 (7th Cir. 2023); *Ewell v. Toney*, 853 F.3d 911, 917 (7th Cir. 2017); *Bridewell v. Eberle*, 730 F.3d 672, 677 (7th Cir. 2013); *Ramos v. City of Chicago*, 716 F.3d 1013, 1020 (7th Cir. 2013).

Flowers also suggests that he suffered noneconomic injuries, such as embarrassment, anxiety, and loss of sleep. (*See* Dkt. No. 87-7, 257:8–260:12.) And indeed, the Seventh Circuit has recognized that damages may be awarded for such harms in § 1983 cases. *Webb v. City of Chester, Ill.*, 813 F.2d 824, 836 (7th Cir. 1987). But at the summary judgment stage, a plaintiff must "set forth by affidavit or other evidence specific facts" establishing injury. *Spuhler v. State Collection Serv., Inc.*, 983 F.3d 282, 285 (7th Cir. 2020). And Flowers has admitted he lost no income nor did he seek medical or psychological treatment or otherwise incur measurable harm from the arrest.

In short, the only concrete injury Flowers identifies is his time in custody. Because Flowers's time in custody was credited to a valid sentence for the underlying Gun Charge, and because he had no constitutional right to be on MSR in the first place, there is no injury this Court can redress through a favorable ruling. *Ewell*, 853 F.3d at 917. Without a redressable injury, Article III standing is lacking, and the Court lacks subject-matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

## II.  *Heck* **Bar**

Even if Flowers did have standing, Defendants would nonetheless be entitled to summary judgment on the merits of his Fourth Amendment claims.

Defendants argue that both claims are barred under the *Heck* doctrine, which requires dismissal of a § 1983 suit brought by a state prisoner if "judgment in favor of the plaintiff would

6

necessarily imply the invalidity of his conviction or sentence," unless the plaintiff can show that the underlying conviction has already been invalidated in some way. *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). The *Heck* bar applies not only to criminal convictions, but to any claim that would necessarily imply the invalidity of a decision affecting the length of custody—such as revocations of good-time credit, parole, or supervised release. *Courtney v. Butler*, 66 F.4th 1043 (7th Cir. 2023), is instructive. In *Courtney*, an IDOC inmate brought a § 1983 suit alleging that officials had wrongfully revoked his MSR before he was released from prison, in violation of the Eighth and Fourteenth Amendments. He claimed the process was procedurally deficient and that there was no evidence he had violated the terms of his release. *Id*. at 1050–51. Like Flowers, the plaintiff challenged the factual and procedural basis for the MSR revocation itself—but the Seventh Circuit held that *Heck* barred the claim because success would necessarily call into question the validity of the revocation, which had not been set aside. *Id*. at 1050.

Here, Flowers's false arrest and unlawful detention claims both arise under the Fourth Amendment and rest on the same theory: Flowers contends that Defendants fabricated evidence of a drug sale, which deprived him of his liberty. *See Neita v. City of Chicago*, 830 F.3d 494, 497 (7th Cir. 2016) (false arrest requires lack of probable cause); *Williams v. City of Chicago*, 315 F. Supp. 3d 1060, 1071 (N.D. Ill. 2018) (unlawful detention requires detention pursuant to legal process unsupported by probable cause). However Flowers frames it, the alleged fabrication is the foundation of both claims.

And that is precisely the problem. The arrest and subsequent detention did not stand alone; they led directly to the revocation of Flowers's supervised release. Accordingly, the relevant question is whether a ruling in his favor would necessarily imply the invalidity of the revocation. *Tolliver v. City of Chicago*, 820 F.3d 237, 242 (7th Cir. 2016). It would. The PRB,

7

expressly basing its decision on the officers' allegedly fabricated account, found by a preponderance of the evidence that Flowers violated his release conditions by committing a new drug offense, declared him a violator, and revoked his release. Flowers remained in custody as a result of that revocation—not because of an unresolved new criminal prosecution. In fact, he received an I-Bond in connection with the new charges but was nonetheless held on the IDOC warrant. Any finding here that Defendants fabricated the very conduct on which the PRB based its revocation determination would necessarily call into question the validity of that determination. That is precisely what *Heck* forbids.

A verdict here that the officers invented the drug conduct would necessarily impeach the PRB's revocation decision, which remains intact. The record shows that Flowers received a preliminary violation hearing on December 27, 2018, at which the hearing officer reviewed the police report, notice, and the State's indictment, and found probable cause. Whether that process was robust or perfunctory, a § 1983 damages judgment premised on the opposite factual conclusion would necessarily undermine the revocation unless and until that revocation is set aside. Nor does it matter that Flowers did not plead guilty to the Drug Charge; his custody stemmed from the PRB's revocation, not the unresolved prosecution. That revocation decision continues to stand, and under *Heck*, it bars his claims.

Finally, Flowers argues that because it is now too late for him to challenge his MSR revocation, *Heck's* favorable termination requirement should be excused. By that logic, any plaintiff could bypass *Heck* simply by waiting out their time to appeal or otherwise contest the underlying conviction. Flowers had multiple avenues to challenge his MSR revocation while he was still in custody both does not appear to have availed himself of any of them. For example, he could have appealed the PRB's decision within 30 days using IDOC's established process. *See*

8

*IDOC Adult Appeal Form*, Illinois Prisoner Review Board, Apr. 11, 2022,

https://prb.illinois.gov/content/dam/soi/en/web/prb/documents/Adult%20Appeal%20Request%2

0Form.pdf. If unsuccessful, he could have pursued judicial review in state court. *See People v.*

*Dorsey*, 183 N.E.3d 715, 732 (Ill. 2021). He might also have sought a federal writ of habeas

corpus. *See Donelson v. Pfister*, 811 F.3d 911, 915 (7th Cir. 2016). Additionally, Flowers had the

ability to petition for parole restoration every three months. *See* 20 Ill. Adm. Code § 107.160

(2019); 730 ILCS 5/3-3-2(b), 3-6-3(c) (West 1994). What he cannot do now is use § 1983 to

collaterally attack an unchallenged, intact revocation decision.

### III.    Indemnification

Flowers's claim for indemnification alleges that the City is liable under 745 ILCS 10/9-

102 for the unlawful acts of its employees. Because the Court has granted summary judgment on

all of Flowers's remaining claims against the individual officer Defendants, the City is entitled to

summary judgment as well. *See* 745 ILCS 10/2-109 ("A local public entity is not liable for an

injury resulting from an act or omission of its employee where the employee is not liable").

### CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Dkt. No. 86) is

granted as to all remaining claims. The Clerk is directed to enter Judgment in favor of

Defendants. This case will be closed.

ENTERED:

Dated:  March 31, 2026

_____

Andrea R. Wood
United States District Judge

9